UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL MORAN, on behalf of himself and all
other persons similarly situated,

                            Plaintiff,

              -against-

JOHN J. PICONE, INC., NORTHEAST REMSCO
CONSTRUCTION, INC. and WESTERN BAYS
CONSTRUCTORS JOINT VENTURE,

                       Defendants.
-------------------------------------------------------------------X

Docket No.: 24-cv-04095
(NRM) (AYS)


Served: November 5, 2024


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT


David D. Barnhorn, Esq.
Peter A. Romero, Esq.

Romero Law Group PLLC
*Attorneys for Plaintiff and Opt-in Plaintiffs*
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………………...1

PROCEDURAL HISTORY AND PERTINENT FACTS…………………………………………1

ARGUMENT…………………………………………………………………………………...5

I.  STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1), (6)……….5

II.  DEFENDANTS' WILFULLY MISCONSTRUE PLAINTIFFS' CLAIMS IN
ORDER TO INCORRECTLY ARGUE THAT THEIR CLAIMS SHOULD
BE PRECLUDED AND FALSELY ASSERT THEIR CLAIMS ARE SUBJECT
TO ARBITRATION……………………………………………………………………….8

III.  PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF THE CBA AND/OR PLA
AND ARE NOT PREEMPTED AND/OR PRECLUDED BY THE NLRA
OR LMRA……………………………………………………………………………..14

IV.  PLAINTIFFS' FLSA CLAIMS ARE NOT PREEMPTED BY THE NLRA…………….19

V.  PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR OVERTIME
COMPENSATION STATES A CLAIM UNDER THE NYLL…………………………...23

CONCLUSION…………………………………………………………………………..26

## <u>TABLE OF AUTHORITIES</u>

### <u>Case Law</u>

*Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461 (S.D.N.Y. 2010)………………….10-13, 15, 17-18

*Barfield v. NYC Health and Hosp. Corp.*, 537 F.3d 132 (2d. Cir. 2008)……………………………9

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981)………………………9-10, 16

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 68 S. Ct. 1186 (1948)…………………………23

*Boutsikakis v. Tri-Borough Home Care, Ltd.*, 2023 WL 3620646 (E.D.N.Y. Apr. 11, 2023)……...23

*Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017)………………………………………...6

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008)………………………………………9

*Cortese v. Skanska Koch, Inc.*, 2023 WL 8368858 (2d Cir. Dec. 4, 2023)………………………...21

*Cortese v. Skanska Koch, Inc.*, 544 F.Supp.3d 456 (S.D.N.Y. 2021)……………………………...20

*Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199 (D.Conn. 2013)…………………………10

*Cunningham v. Pret A Manger Ltd.*, 2020 WL 122835 (S.D.N.Y. Jan. 10, 2020)………………….5

*Dawson v. New York City Transit Auth.*, 624 F. App'x 763 (2d Cir. 2015)…………………………5

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54 (S.D.N.Y. 2010)………………………………6

*Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*,
    704 F. Supp. 3d 337 (E.D.N.Y. 2023)……………………………………………………...23

*Fernandez v. Pinnacle Grp. NY LLC*, 2023 WL 2525996 (S.D.N.Y. Mar. 15, 2023)……..11-12, 22

*Gagliardi v. Vill. of Pawling*, 18 F.3d 188 (2d Cir. 1994)………………………………………...6

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013)…………………………………………9

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016)………………………………9

*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)…………………6

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007)………………………………22, 25

*Grochowski v. Phoenix Construction*, 318 F.3d 80 (2 Cir. 2003)……………………………...24-25

*Greystone Bank v. Tavarez*, 2010 WL 3325203 (E.D.N.Y. Aug. 19, 2010)………………………...5

*Hoops v. Keyspan Energy*, 794 F.Supp.2d 371 (E.D.N.Y. 2011)…………………………………10

*Isaacs v. Cent. Parking Sys. of New York, Inc.*,
    2012 WL 957494 (E.D.N.Y. Feb. 27, 2012)…………………………….....9-11, 13, 15-17

*Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986)…………………………………5

*Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412 (S.D.N.Y. 2013)…………………………..7

*Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81 (2d Cir. 2016)……………………………..12-13

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)…………………………………......5

*Lumplkin v. Brehm*, 230 F. Supp 3d. 178 (S.D.N.Y. 2017)……………………………………….6

*Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000)…………………………………………………...5

*Panayiotou v. N.Y.C. Dep't of Educ.*, 2019 WL 2453438 (E.D.N.Y. June 12, 2019)……………..6

*Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513 (S.D.N.Y. 2014)…………………………….10, 18

*Roache v. Long Island R.R.*, 487 F. Supp. 3d 154 (E.D.N.Y. 2020)…………………………….20

*Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021)…………..7

*Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357 (S.D.N.Y. 2022)………………………..12-13

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959)……………………….19-20

*Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590 (1944)…………………………9

*Tufariello v. Long Island R. Co.*, 458 F.3d 80 (2d Cir. 2006)………………………………….....21

*Tutor Perini Building Corp. v. New York City Regional Center, LLC*,
    2020 WL 7711629 (S.D.N.Y. Dec. 12, 2020)……………………………………………5

*United States v. Sforza*, 326 F.3d 107 (2d Cir. 2003)…………………………………………....21

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 65 S.Ct. 1242 (1945)…………...25

*Wang v. Shun Lee Palace Rest., Inc.*,
    2023 WL 4421699, at *5 (S.D.N.Y. July 7, 2023)…………………………10, 14-15, 19

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)……………………………5

## **Statutes and Rules**

Fed. R. Civ. P. 12……………………………………………………………………...5-6

12 N.Y.C.C.R.R. § 142-2.2………………………………………………………………...9

29 C.F.R. § 778.115…………………………………………………………………………22

29 C.F.R. § 778.200…………………………………………………………......9, 14, 18

29 U.S.C. § 157……………………………………………………………………..19

29 U.S.C. § 158……………………………………………………………………..19

29 U.S.C. § 207………………………………………………………………….9, 14, 18

## PRELIMINARY STATEMENT

Plaintiff, Michael Moran and three opt-in Plaintiffs (collectively "Plaintiffs"), by and through their attorneys the Romero Law Group PLLC, respectfully submits this Memorandum of Law in opposition to the motion filed by Defendants, John J. Picone, Inc., Northeast Remsco Construction, Inc. and Western Bays Constructors Joint Venture (collectively "Defendants") pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the Complaint. Defendants contend that Plaintiffs' claims for unpaid overtime wages due under the Fair Labor Standards Act ("FLSA") are preempted and/or precluded by the National Labor Relations Act ("NLRA") and Labor Management Relations Act ("LMRA"). Defendants' motion rests entirely on the *fiction* that Plaintiffs' claims that he was not paid the wages, benefits and overtime required by the collective bargaining agreement ("CBA"), the project labor agreement ("PLA") or the Davis-Baron Act ("DBA"). Plaintiffs have asserted no such claims. Nowhere in the Amended Complaint does Plaintiffs allege a breach of the CBA or PLA (CBA and PLA referred to collectively as the "CBA") or that Defendants failed to pay rates required by the DBA. Rather, Plaintiffs' sole claims are that Defendants failed to pay them overtime compensation at a rate of at least one and one-half times their regular rate of pay for hours worked after 40 hours per workweek as required by the FLSA and New York Labor Law ("NYLL").

## PROCEDURAL HISTORY AND PERTINENT FACTS

On June 7, 2024, Plaintiff Moran filed this action on behalf of himself and all other persons similarly situated, seeking relief for Defendants' violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting N.Y.S. Department of Labor Regulations, 12 N.Y.C.R.R. § 142 ("NYLL"). *See* Dkt. No. 1. Plaintiff Moran brought this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), and pursuant to Rule 23 of the Federal Rules of

Civil Procedure with respect to his NYLL claims to recover from Defendants unpaid overtime wages, liquidated damages and attorneys' fees and costs on behalf of himself and all individuals similarly situated under the FLSA and the NYLL. On August 22, 2022, Defendants filed a motion seeking to dismiss Plaintiff Moran's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 8. On June 5, 2024, Plaintiff Moran filed his Amended Complaint asserting substantially similar overtime claims, added additional claims under NYLL § 195(1) and (3), and expanding upon his original allegations. D.E. 14. On September 10, 2024, Defendants decided to rely on their original brief when renewing their motion to dismiss against the Amended Complaint. D.E. 17. Between September 30, 2024 and October 8, 2024, three additional Plaintiffs filed consent to join forms to become party Plaintiffs. Dkt. Nos. 21-22, 23.

Defendants, John P. Picone, Inc. ("Picone") and Northeast Remsco Construction, Inc. ("Northeast Remsco"), are members of a Joint Venture, Defendant Western Bays Constructors ("WBC"). Dkt. No. 1 at ¶¶ 1, 16. Defendants provided construction services for the Bay Park Conveyance Project in the Town of Hempstead, New York (the "Project") and employed Plaintiff Moran and other similarly situated laborers to perform labor on the Project. Plaintiff Moran and putative plaintiffs regularly worked in excess of 40 hours per workweek when they worked the night-shift but they were paid less than one and one-half times their regular rate for those hours worked after 40 hours per workweek in violation of both the FLSA and the NYLL. *Id*.

Plaintiff Moran was employed by Defendants as a laborer on the Project from in or September 2021 until in or about November 2023. Dkt. No. 1 at ¶ 24. Plaintiff Moran was a non-exempt, hourly-paid employee. *Id*. at ¶ 25. Plaintiff Moran's duties included roadwork. Throughout his employment with Defendants, Plaintiff Moran regularly worked more than 40 hours in a single workweek. Declaration of Michael Moran ("Moran Decl.") at ¶ 3. From in or

about September 2021 until in or about April 2023, Plaintiff Moran regularly worked the night-shift, Monday to Friday, from 8:00 p.m. to 6:00 a.m. *Id*. at ¶ 4. From in or about September 2021 until in or about April 2023, Defendants failed to pay Plaintiff Moran overtime pay at a rate not less than one and one-half times his blended regular rate of pay for hours that he worked after 40 hours in a single workweek when he worked the night shift. *Id*. at ¶ 5.

For example, for the pay period ending January 16, 2023, Plaintiff Moran was paid for 16 hours at the rate of $53.89 and 24 hours at the rate of $54.55. Defendants paid Plaintiff Moran for 13.50 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 6  For the pay period ending February 6, 2023, Plaintiff Moran was paid for 32 hours at the rate of $54.50 and 8 hours at the rate of $54.99. Defendants paid Plaintiff Moran for 12 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 7  For the pay period ending February 13, 2023, Plaintiff Moran was paid for 24 hours at the rate of $54.50 and 16 hours at the rate of $54.99. Defendants paid Plaintiff Moran for 11.5 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 8 For the pay period ending March 6, 2023, Plaintiff Moran was paid for 8 hours at the rate of $53.36, 16 hours at the rate of $54.55, 8 hours at the rate of $54.99 and 8 hours at the rate of $56.09. Defendants paid Plaintiff Moran for 11.5 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 9  For the pay period ending March 13, 2023, Plaintiff Moran was paid for 16 hours at the rate of $53.89 and 24 hours at the rate of $54.55. Defendants paid Plaintiff Moran for 13.5 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 10  For the pay period ending March 20, 203, Plaintiff Moran was paid

3

for 8 hours at the rate of $53.89, 8 hours at the rate of $54.55, and 16 hours at the rate of $57.19. Defendants paid Plaintiff Moran for 7.5 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 11 For the pay period ending March 27, 2023, Plaintiff Moran was paid for 8 hours at the rate of $52.79, 8 hours at the rate of $53.36, 16 hours at the rate of $54.55, and 8 hours at the rate of $54.90. Defendants paid Plaintiff Moran for 14.50 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 12  For the pay period ending April 3, 2023, Plaintiff Moran was paid for 8 hours at the rate of $52.70, 16 hours at the rate of $53.50, and 16 hours at the rate of $54.55. Defendants paid Plaintiff Moran for 16 hours overtime at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 13  For the period ending April 10, 2023, Plaintiff Moran was paid for 8 hours at the rate of $53.36, 8 hours at the rate of $53.89, 16 hours at the rate of $54.55 and 8 hours at the rate of $55.56. Defendants paid Plaintiff Moran for 13 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 14  For the pay period ending April 17, 2023, Plaintiff Moran was paid for 8 hours at the rate of $53.89, 8 hours at the rate of $54.55, and 24 hours at the rate of $57.19. Defendants paid Plaintiff Moran for 5.5 overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for this pay period. *Id*. at ¶ 15.

Defendants paid and treated Plaintiff Moran and the collective action Plaintiffs in an identical or substantially similar manner. Dkt. No. 14 at ¶¶ 49-53.

## ARGUMENT

### I.    STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1), (6)

A court may dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000); *see also Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  However, for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), reference to evidence outside the pleading is not unlimited and should be considered only where the document is relevant to the jurisdictional question. *See Cunningham v. Pret A Manger Ltd*., 2020 WL 122835, at *5 (S.D.N.Y. Jan. 10, 2020) (district court retains discretion to permit targeted discovery on the issues of subject matter jurisdiction); *Tutor Perini Building Corp. v. New York City Regional Center, LLC*, 2020 WL 7711629, at *3 (S.D.N.Y. Dec. 12, 2020); *Greystone Bank v. Tavarez*, No. 09-CV-5192 SLT, 2010 WL 3325203, at *2 (E.D.N.Y. Aug. 19, 2010) ("the district court may order limited jurisdictional discovery before ruling on the issue of subject matter jurisdiction.").

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume that all allegations in the Amended Complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Dawson v. New York City Transit Auth.*, 624 F. App'x 763, 765 (2d Cir. 2015) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011)) (Second Circuit employing "standard applicable to Rule 12(b)(6) motions to dismiss, 'accept[ing] all factual allegations in the [C]omplaint as true and

draw[ing] all reasonable inferences in [the nonmoving party's] favor'"); *Littlejohn v. City of New York*, 795 F.3d 297, 306-307 (2d Cir. 2015) (citing *Ofori-Tenkorang v. Am Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006)).

Defendants erroneously seek dismissal of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) based on purported facts that are not asserted in the Amended Complaint and by proffering a litany of documents that are not referred to or incorporated into the Amended Complaint. Defendants' conjecture and extraneous documents must be disregarded.  Indeed, on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts must consider only the facts asserted in the Amended Complaint and construe those facts in favor of the Plaintiff. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)) (court generally "confined 'to the allegations contained within the four corners of [the] complaint'" when considering motion to dismiss); *Panayiotou v. N.Y.C. Dep't of Educ.*, 2019 WL 2453438, at *2 (E.D.N.Y. June 12, 2019) (quoting *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011); and citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)) (courts may consider only facts within the "'four corners of the complaint'" on a motion to dismiss and must construe those facts in light most favorable to the plaintiff); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 191 (2d Cir. 1994) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)) (disregarding facts outside of the complaint that would inappropriately require a summary judgment standard); *Lumplkin v. Brehm*, 230 F. Supp 3d. 178, 183 (S.D.N.Y. 2017) (refusing to acknowledge defendants' brief due to heavy reliance on a declaration and exhibits it could not consider on a 12(b)(6) motion).[1]  To the extent that Defendants' motion pursuant to Fed.

---

[1] Defendants' reliance on extraneous these documents with respect to their motion pursuant to Fed. R. Civ. P. 12(b)(6) must be disregarded as those documents are not integral to Plaintiff Moran's Amended Complaint. "To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Grp.*,

R. Civ. P. 12(b)(6) relies on purported facts or documents outside Plaintiff Moran's Amended Complaint, those asserted facts and documents must be disregarded and Defendants' motion should be denied.

The Second Circuit has made clear that it is inappropriate for a court to consider a CBA in evaluating a motion to dismiss claims not dependent on the CBA and where, *as is the case here*, no facts about the CBA are alleged in a plaintiff's complaint. *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 419-420 (S.D.N.Y. 2013) (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-203 (2d Cir.2013)) (reversing district court's judgment granting a Rule 12(b)(6) motion to dismiss where court considered a CBA that was not "pled or attached to the complaints"). This is so even where the defendant, as is true here, asserts that dismissal is appropriate because plaintiff's claims are preempted by the LMRA based on the existence of a CBA between plaintiff and defendant. *See id.* at 203 ("We cannot affirm the dismissal on the basis of LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on matter outside of the pleadings, and was, therefore, inappropriate.").

---

*Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (materials must be relied upon in drafting of complaint to be integral); *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *2-3 (E.D.N.Y. Aug. 27, 2021) (quoting *Goal v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); and *U.S. v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020)) (refusing to consider DOL authorization letter on motion to dismiss NYLL § 191 claim as it was not integral to complaint where plaintiff not aware of and did not rely upon authorization letter when drafting complaint, and that document was not referenced in, attached to, or incorporated in complaint and noting "'[b]ecause a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence,'" a court is "'normally required to look only to the allegations on the face of the complaint[.]'"). Here, Plaintiff Moran did not rely on Defendants' extraneous documents, most of which related to Defendants' CBA and PLA and other related documentation. These documents were obviously not relied upon in preparing Plaintiff Moran's pleading – and therefore not integral to the Amended Complaint – as he asserts only statutory claims under the FLSA and NYLL.

II.    **DEFENDANTS' WILFULLY MISCONSTRUE PLAINTIFFS' CLAIMS IN ORDER TO INCORRECTLY ARGUE THAT THEIR CLAIMS SHOULD BE PRECLUDED AND FALSELY ASSERT THEIR CLAIMS ARE SUBJECT TO ARBITRATION**

Defendants' motion is predicated on the fiction that Plaintiffs claim that they were not paid the wages and overtime required by the CBA and/or the PLA.  From this false premise, Defendants argue that Plaintiffs' claims are pre-empted or precluded by the NLRA and/or the LMRA.  In fact, however, Plaintiffs have not made any claim whatsoever that is based on or arises out of the CBA or PLA.  Indeed, Plaintiff Moran, like the opt-in Plaintiffs, alleges that he was paid the night differential required by the CBA.  Indeed, Plaintiffs were paid a premium equal to about 30% of the base rate for working the nightshift.  Plaintiffs do not allege that Defendants failed to pay them the nighttime differential, that the differential rate was incorrect, or that Defendants failed to comply with any contractual obligations.

Rather, Plaintiffs claim through the Amended Complaint that Defendants' calculation of their overtime rate improperly excluded the nightshift differential that Plaintiffs earned and were actually paid in violation of the FLSA.  As a result, Defendants failed to pay Plaintiff and similarly situated hourly-paid employees who worked the nightshift overtime for hours worked after 40 hours at a rate of at least one and one-half times their correct regular rate, which must include the nighttime differential under the applicable regulations, in violation of the FLSA and NYLL.  Thus, Plaintiffs' claims are purely statutory claims arising solely under the FLSA and NYLL.  Therefore, Plaintiffs' claims are not subject to the NLRA or LMRA.

Plaintiff Moran's allegations that he and the opt-in Plaintiffs were paid the incorrect overtime rate states  FLSA and NYLL claims that are independent, statutorily-conferred rights, distinct from any contractual rights granted under the CBA and are not precluded by the LMRA.  "Nowhere in the Amended Complaint does Plaintiff allege a breach of the CBA, or that he is challenging any provision thereof.  Rather, the Amended Complaint's sole focus is plaintiff's

statutory rights to compensation." *Isaacs v. Cent. Parking Sys. of New York, Inc.*, 2012 WL 957494, at *5 (E.D.N.Y. Feb. 27, 2012).

The FLSA and NYLL require that weekly hours worked beyond 40 be paid at "a rate not less than one and one-half times the regular rate." 29 U.S.C. § 207(a)(1); *see* 12 N.Y.C.C.R.R. § 142-2.2.  It also requires that "all remuneration for employment," be included in an employee's "regular rate" when calculating overtime pay. 29 U.S.C. § 207(e); *see also* 29 C.F.R. § 778.200 *et. seq*.

The kind of remuneration that Plaintiffs claim are owed to them is controlled by overtime pay regulations.  Whether an employee was entitled to a particular night differential in the first place, obviously, is not governed by statute.  In this case, the night differential is required by the CBA.  However, Plaintiff was paid the night differential as required by the CBA.  The court only needs to determine whether the shift differential pay, which was actually paid to Plaintiffs, should have been used to calculate Plaintiffs' overtime rate as required by the FLSA.  Therefore, Plaintiffs' claims are not subject to the CBA grievance procedures.

It is well established that the right to overtime under the FLSA cannot be waived by contract.[2]  The Supreme Court has held that the FLSA's "enforcement scheme grants individual

---

[2] The well-established law holds that an employer and employee cannot agree to violate wage laws. *See Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 602-603 (1944) ("Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights"); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)) (cannot waive statutory rights under wage law "because waiver would nullify the purposes" of the wage law "and thwart the legislative policies it was designed to effectuate"); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) (wage requirements "cannot be modified by contract"); *Barrentine*, 450 U.S. at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 902 (1945)) (emphasizing "nonwaivable nature of an individual employee's right" to wages and that such provisions "cannot be abridged by contract or otherwise waived"); *Barfield v. NYC Health and Hosp. Corp.*, 537 F.3d 132, 148 (2d Cir. 2008) (citing *Barrentine*, 450 U.S. at 740) (same); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 289 (2d Cir. 2008) (citing *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 302 (1985)) (employer cannot avoid obligations under wage law even if "employees voluntarily engage in

employees broad access to the courts ... and no exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 744, 101 S.Ct. 1437 (1981). While § 301 of the LMRA "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement,' Plaintiffs' claims here are independent of the CBA and do not require analysis of the CBA. *See*, *e.g.*, *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 523 (S.D.N.Y. 2014); *Wang v. Shun Lee Palace Rest., Inc.*, 2023 WL 4421699, at *5 (S.D.N.Y. July 7, 2023).

Defendants are correct that before bringing a LMRA § 301 claim, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement."  But plaintiff here *does not* assert claims under the LMRA.  "[W]hen the dispute involves the violation of statutory rights under the FLSA, absent a 'clear and unmistakable waiver' ... an employee is not required to exhaust the grievance procedure prior to bringing a federal lawsuit." *Hoops v. Keyspan Energy*, 794 F.Supp.2d 371, 378 (E.D.N.Y. 2011); *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-80, 119 S.Ct. 391 (1998)) ("A collective bargaining agreement cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement was 'clear and unmistakable' that the parties intended to arbitrate such individual claims.").  A waiver is clear and unmistakable when, in short, "employees specifically agree to submit all federal causes of action arising out of their employment to arbitration" or "when the CBA contains an explicit incorporation of the statutory ... requirements in addition to a broad and general arbitration clause .... Courts agree that specific incorporation requires identifying the ... statutes by name or citation." *Isaacs*, 2012 WL 957494,

---

inadequately compensated work"); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 207 (D.Conn. 2013) (noting that employee waiving entitlement to wage provisions is "simply, illegal").

at *3; *Alderman*, 733 F. Supp. 2d at 469 (citing *Rogers v. N.Y. Univ.,* 220 F.3d 73, 76 (2d Cir. 2000); and *Kelly v. Classic Rests. Corp.*, 2003 WL 22052845, at *4 (S.D.N.Y. Sept. 2, 2003)) ("A 'clear and unmistakable' waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes."). "Arbitration clauses that cover 'any dispute concerning the interpretation, application, or claimed violation of a specific term or provision' of the collective bargaining agreement do not contain the requisite 'clear and unmistakable' waiver because 'the degree of generality [in the arbitration provision] falls far short of a specific agreement to submit all federal claims to arbitration.'" *Alderman*, 733 F. Supp. 2d at 469-470 (quoting *Rogers,* 220 F.3d at 76).

The arbitration provision cited in Defendants' motion is very general and applies only to disputes based on the CBA, does not reference statutory claims, and does not identify any specific statutes:

> **"Any question, dispute or claim arising out of, or involving, the interpretation or application of this Agreement (other than jurisdictional disputes or alleged violations of Article VII, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure described below: provided, in all cases, that the question, dispute, or claim must have arisen during the term of this Agreement."**

*See* Article IX Grievance and Arbitration Procedure, attached as Exhibit A to the Declaration of Peter A. Romero in Opposition. "[W]hen the dispute involves the violation of statutory rights under the FLSA, absent a 'clear and unmistakable waiver' ... an employee is not required to exhaust the grievance procedure prior to bringing a federal lawsuit." *Fernandez v. Pinnacle Grp. NY LLC*, 2023 WL 2525996, at *5 (S.D.N.Y. Mar. 15, 2023) (quoting *Isaacs*, 2012 WL 957494, at *3). The

11

"clear and unmistakable" standard "require[s] specific references in the CBA either to the statutes in question or to statutory causes of action generally." *Id.* (quoting *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016)). This exacting standard "ensures that employees' right to bring statutory claims in court is not waived by operation of confusing, 'very general' arbitration clauses." *Id.* (quoting *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 223 (2d Cir. 2019)) (citation omitted); *Alderman*, 733 F. Supp. 2d at 469-470; *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83-84 (2d Cir. 2016) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80-81, 119 S. Ct. 391 (1998)) (finding general provisions that disputes must be arbitrated "did not clearly and unmistakably require arbitration of the plaintiff's claim under the Americans with Disabilities Act" and noting that "[a]mong other reasons cited, the Court stated that the 'arbitration clause is very general, providing for arbitration of 'matters under dispute,' ... which could be understood to mean matters in dispute under the contract.'"); *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 367 (S.D.N.Y. 2022), *aff'd*, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (quoting *Lawrence*, 841 F.3d at 85) ("Waiver provisions that can be construed to refer only to contractual disputes, 'even if the issues involved are coextensive' with a statutory right, are not 'clear and unmistakable'").[3]

As discussed above, Plaintiffs' FLSA claim is a statutory claim is wholly independent of the CBA and does not arise from its provisions. The CBA do not contain a "**clear** and

___

[3] In this matter, the Court noted that the relevant provision of the collective bargaining agreement required "that '[a]ll complaints, disputes, and grievances ... involving questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation thereto, directly or indirectly,' must proceed through the contractual grievance procedures, and if not resolved, 'shall be submitted for mediation or arbitration.' (CBA 5). It does not specify that disputes arising under statute – federal or otherwise – are subject to arbitration. Nor does it reference any specific statutes. The CBA's general language thus does not demonstrate the 'clear and unmistakable' waiver required to compel arbitration of statutory claims." *Sanchez*, 638 F. Supp. 3d at 368 (quoting *Lawrence*, 841 F.3d at 84). Here, like in *Sanchez*, the arbitration clause does not demonstrate the clear and unmistakable waiver necessary to mandate arbitration of Plaintiff's FLSA and NYLL claims.

**unmistakable** waiver" of the right to bring those claims in federal court.  The CBA's arbitration provision does not specifically reference the FLSA or NYLL.  Nor does the arbitration provision reference "statutory causes of action generally."  The "very general" language used in the CBA relating to "[a]ny question, dispute or claim arising out of, or involving, the interpretation or application of this Agreement" does not satisfy the exacting "**clear** and **unmistakable**" standard for waiving Plaintiffs' statutory rights under the FLSA.  Indeed, by its own language, the arbitration clause pertains only to disputes based on the requirements of the CBA itself, and does not require that of any claims arising from statutory law.  Thus, Plaintiffs were not required to exhaust the grievance procedure prior to bringing a federal lawsuit for claims under the FLSA and NYLL. *See Isaacs*, 2012 WL 957494, at *3; *Alderman*, 733 F. Supp. 2d at 469-470 (citing *Tran v. Tran,* 54 F.3d 115, 117-118 (2d Cir.1995); and *Mascol v. E & L Transp., Inc.,* 387 F.Supp.2d 87, 104-105 (E.D.N.Y. 2005)) ("Courts have held that plaintiffs covered by a collective bargaining agreement that required arbitration of any disputes concerning the interpretation or application of the agreement are entitled to pursue their individual statutory rights under the FLSA in federal court."); *Lawrence*, 841 F.3d at 83-84 (quoting *Rogers*, 220 F.3d at 74-77; and collecting cases) (where collective bargaining agreement provision required "'there shall be no discrimination as defined by applicable Federal, New York State, and New York City laws, against any present or future employee by reason of ... physical or mental disability'" and that "'any dispute concerning the interpretation, application, or claimed violation of a specific term or provision of this Agreement' must be arbitrated'", the Second Circuit held that these "provisions at issue did not clearly and unmistakably waive the employee's federal forum rights because they neither explicitly compelled arbitration of statutory (as opposed to contractual) causes of action, nor did they incorporate specific antidiscrimination statutes"); *Sanchez*, 638 F. Supp. 3d at 367-368.

13

Defendants falsely assert that "this Court is being asked in this action to interpret the rules, regulations and practices dictated by both Local 1298 and its CBA relating to the payment and allocation of wages...paid to...Plaintiff." Defendants are wrong. Nowhere in the Amended Complaint do Plaintiffs allege that Defendants failed to adhere to the requirements of the CBA with respect to the payment of wages. Indeed, Plaintiffs acknowledge that they were actually paid the nightshift differential. Rather, Plaintiffs' claims are solely statutory claims, independent of the CBA. Plaintiffs allege that Defendants failed to include all remuneration, including the nightshift differential, in their regular rate of pay when calculating Plaintiffs' correct overtime rate of pay, as required by the FLSA and NYLL.

## III.    PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF THE CBA AND/OR PLA AND ARE NOT PREEMPTED AND/OR PRECLUDED BY THE NLRA OR LMRA

Throughout their motion, Defendants repeatedly mischaracterize the nature of Plaintiffs' claims in order to support their argument that their claims are preempted and/or precluded by the NLRA and/or LMRA. For example, Defendants assert that "Plaintiff [Moran]'s claims...that he was not paid the requisite wages, benefits and overtime required by the CBA...would be a violation of the NLRA." *See* Def. Mol. at 8. Nowhere, however, does Plaintiff Moran's Amended Complaint allege that Plaintiffs were not paid the wages required by the CBA. As explained herein, Plaintiffs were paid the differential required by the CBA. Plaintiffs allege that Defendants violated the FLSA, which requires that (i) weekly hours worked beyond 40 be paid at "a rate not less than one and one-half times the regular rate" pursuant to 29 U.S.C. § 207(a)(1) and (ii) "all remuneration for employment" be included in an employee's "regular rate" when calculating their overtime pay. 29 U.S.C. § 207(e); *see also* 29 C.F.R. § 778.200 *et. seq*.

The premium that Plaintiffs claim is owed them is controlled by not by the CBA, but rather it is controlled by the statutory provisions of the FLSA and its regulations. *See Wang*, 2023 WL

4421699, at *5 ("Defendants' argument – that I need to determine whether to include the miscellaneous benefits under CBA in the calculation of Plaintiffs' regular rate of pay … should be governed by FLSA, not the CBA.  Therefore, I look to the FLSA, not CBA, to decide whether the payments under the CBA should have been included in Plaintiffs' 'total remuneration,' and no interpretation of the CBA terms is required.")

Whether an employee was entitled to a particular night differential in the first place, obviously, is not governed by statute and is irrelevant to this litigation.  In this case, the night differential is required by the CBA. Here, Plaintiff was paid the night differential as required by the CBA.  The court only needs to determine whether the shift differential pay, which was actually paid to Plaintiffs, should have been considered part of Plaintiffs' regular rate when calculating Plaintiffs' correct overtime rate of pay at one and one-half times his regular rate of pay as required by the FLSA.

Defendants repeat their false characterization of Plaintiffs' claims elsewhere in their brief, arguing that: "*When the parties' claims arise form a dispute over the interpretation of a CBA, as they do in the instant action, the LMRA preempts*" the claim, *see* Mol. at 9; and that "*As the Plaintiff's claims in the instant action all rest upon the purported fact that the Defendants failed to allocate the payment of wages, overtime…in accordance with the CBA that governed the terms and conditions of Plaintiff's employment*", *see* Mol. at 10.  From these false assertions, Defendants argue that the NLRA and LMRA prevent the Court from determining Plaintiffs' FLSA claim. *See* Mol. at 11.

"[N]either § 301 nor an applicable CBA destroys independent, statutorily guaranteed rights." *Isaacs*, 2012 WL 957494, at *3; *Alderman*, 733 F. Supp. 2d at 467-469 (quoting *Vera v. Saks & Co.,* 335 F.3d 109, 115 (2d Cir. 2003); and *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114

15

S.Ct. 2068 (1994)) ("if a state 'prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rights or rules would not be preempted by section 301.' Indeed, the 'bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" and holding that LMRA does not preempt NYLL § 196-d claim relating to payment of gratuities as an independent statutory claim even where the collective bargaining agreement had similar provisions relating to gratuities). The Supreme Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act and have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. *Isaacs*, 2012 WL 957494, at *3 (citing *Barrentine*, 450 U.S. at 740; *see* Pg. 6 at n. 1. As the Court explained in *Barrentine*:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under the statute an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

450 U.S. at 745-746.

The *Issacs* case is directly on point. The plaintiff in *Issacs* alleged that his employer excluded certain payments such as shift differentials and longevity pay from his overtime rate calculation. *Id*. at *4. The Court began its analysis by noting that if the plaintiff's claim requires the Court to determine whether certain shift differentials and longevity pay were required to be incorporated into his regular wages in accordance with the CBA, the claim must be dismissed since that type of dispute is subject to contractual grievance procedures. *Id*. at *5 "On the other hand, if

the Court only needs to determine whether shift differentials and longevity pay, which were *actually* paid to [plaintiff], should have been used to calculate [plaintiff]'s overtime rate [by statute], such a claim would *not* be subject to the grievance procedures." (emphasis added). *Id*.

Next, the Court in *Issacs* noted that the plaintiff had not claimed that the Court would need to determine his non-overtime rate under the CBA. *Id*. The plaintiff's amended complaint alleged only that the defendant's calculation of the overtime rate excluded non-hourly compensation such as shift differentials and longevity pay. *Id*. The plaintiff's amended complaint made no allegation that his non-overtime rate was incorrect. *Id*. Therefore, the Court concluded that the plaintiff's statutory overtime claim would require only oblique, if any, reference to the CBA. Accordingly, plaintiff's overtime allegation made out a claim under FLSA and its New York counterpart and were "beyond the noose of the LMRA." *Id*.

In this case, as in *Isaacs*, Plaintiffs do not allege a breach of the CBA or that their non-overtime rate was incorrect. Like the plaintiff in *Isaacs*, Plaintiffs allege that their employer excluded the shift differential that they was *actually* paid to them in accordance with the CBA from their regular rate with calculating their overtime rate in violation of the FLSA and NYLL. The determination of Plaintiffs' statutory claim would not require reference to the CBA. Thus, Plaintiffs' claim is not subject to the NLRA and/or LMRA.

Another Court similarly held that a dispute regarding whether special function service fees, which was argued to be a form of service charge that counts as wages, should be included as part of an employee's regular rate when calculating their overtime rate under the FLSA are an independent statutory claim that is not required to be arbitrated under the collective bargaining agreement. *Alderman*, 733 F. Supp. 2d at 469-471.

17

Plaintiffs' claims are based on Defendants' failure to include the nighttime differential as part of the regular rate when calculating Plaintiffs' overtime rate of pay.  These claims are based on express, statutory provisions of the FLSA and NYLL, which require that "all remuneration" be included in calculating an employee's regular rate of pay when calculating overtime pay. 29 U.S.C. § 207(e); *see also* 29 C.F.R. § 778.200 *et. seq.*  Thus, Plaintiffs' claims do not require interpretation of the CBA because Plaintiffs do not allege that Defendants failed to pay the nightshift differential or that the differential rate was incorrect.  Indeed, Plaintiffs allege the differential rate was actually paid in accordance with the CBA, but that Defendants failed to include the differential in calculating their proper overtime rate as they were required to do under the FLSA and NYLL. Where, as here, the <u>only</u> allegation is that the employer paid a nightshift differential but failed to include the premium in calculating the employee's overtime as required under the FLSA and NYLL, courts have held that CBAs provide no basis for a finding of preemption and dismissal of claims in favor of arbitration. *See*, *e.g.*, *Ramirez*, 35 F. Supp. 3d at 523 (holding that plaintiffs' nighttime differential claims were not precluded by Section 301 as those claims invoked statutory rights that were independent of the rights conferred on the parties by the CBAs where the Complaint alleged that the defendants improperly calculated the plaintiffs' base rate of pay for determining their overtime compensation by failing to include the nighttime differential that the plaintiffs earned, and that this violated their right to overtime compensation under the FLSA and the NYLL and the plaintiffs did not allege that the CBAs were breached or that the plaintiffs were owed any outstanding nighttime differential pay under the terms of the CBAs, thus there was no dispute about the parties' rights under the CBA); *Alderman*, 733 F. Supp. 2d at 469-471.

Many courts have found that FLSA overtime claims are not preempted by LMRA where there is no actual dispute over the rights and obligations as set out by CBA's terms. *See Wang*, 2023 WL 4421699, at *5 (citing cases).

## IV.    PLAINTIFFS' FLSA CLAIMS ARE NOT PREEMPTED BY THE NLRA

Defendants incorrectly argue that Plaintiffs' FLSA claims should be preempted by the NLRA. Defendants' arguments are based on a flawed understanding of their cited case law. In particular, in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242-245 (1959), the Supreme Court established that the NLRB possesses the exclusive jurisdiction to consider claims against an employer based upon sections seven and eight of the NLRA. Thus, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *Id.* at 245.[4]  In *Garmon*, a California state court awarded damages against picketers "based on the assumption that the behavior of the petitioning unions constituted an unfair labor practice." *Id*. at 245. The Supreme Court held that this was not an issue for state courts, or federal courts, to decide, stating that "the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *Id*. The Court held that "when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [Section] 7 of the [NLRA], or constitute an unfair labor practice under [Section] 8, due regard for the federal enactment requires that state

---

[4] Sections 7 and 8 of the NLRA guarantee employees the right to organize and engage in other forms of protected concerted action, and identify forms of unfair labor practices. *See* 29 U.S.C. §§ 157, 158(a)-(b)). Section 8(a)(1) of the Act provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7 of the Act. 29 U.S.C. § 158(a)(1). Section 7 in turn provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* at § 157.

jurisdiction must yield." *Id*. at 244. *Garmon* preemption applies, and the NLRB has exclusive jurisdiction, only "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the [NLRA]." *Id*. at 245.

Defendants' argument that Plaintiffs' claims are preempted by *Garmon* is wrong because Plaintiff has not alleged an unfair labor practice, and Plaintiffs' claims that Defendants' failed to include the night differential that Plaintiffs were actually paid when calculating their overtime wages does not involve activities protected by Section 7 or 8 of the NLRA. *See Cortese v. Skanska Koch, Inc*., 544 F.Supp.3d 456 (S.D.N.Y. 2021) (holding that *Garmon* preemption did not apply to plaintiff's claims alleging violations of the FLSA and NYLL). Defendants argue that "*Plaintiff's claims...that he was not paid the requisite wages, benefits and overtime required by the CBA without negotiating a change in wages, benefits and overtime rates with Local 1298, would be a violation of the NLRA*." *See* Def. Mol. at 8. As explained above, however, Plaintiffs have made no such claims whatsoever. Plaintiffs have not alleged that Defendants failed to pay the wages or benefits required by the CBA and have not alleged an unfair labor practice under the NLRA. Simply stated, *Garmon* does not apply to Plaintiffs' claims that Defendants failed to include all remuneration in calculating their overtime rate as required by the FLSA.

Defendants' argument that Plaintiffs' FLSA claims are preempted by *Garmon* is also wrong because they arise under *federal* law, not *state* law. While Defendants' motion discusses the doctrine of *Garmon* preemption, that doctrine, which derives from the Supremacy Clause of the U.S. Constitution, applies only to *state* and *local* laws that conflict with federal law. *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 166 (E.D.N.Y. 2020) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 543 (2008); and *Willis v. Verizon New York, Inc.*, 2012 WL 2370125, at *5 (E.D.N.Y. June 22, 2012)). The doctrine of preemption is "inapplicable to a potential conflict

between two federal statutes." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 86 (2d Cir. 2006); *Cortese v. Skanska Koch, Inc*., 2023 WL 8368858, at *3 (2d Cir. Dec. 4, 2023) ("We cannot say that the NLRA, a federal statute, "preempts" Plaintiffs' count one claim under the FLSA, another federal statute.").  Defendants' argument, which suggests a conflict between two federal laws – the FLSA and the NLRA – is more appropriately framed as one of *preclusion*, not *preemption*. *Roache*, 487 F.Supp.3d at 166.  Defendants' argument that Plaintiffs' FLSA claim is precluded by the NLRA "cuts against well-established law that strongly disfavors preclusion of one federal statute by another absent express manifestations of preclusive intent." *United States v. Sforza*, 326 F.3d 107, 111 (2d Cir. 2003); *Cortese*, 2023 WL 8368858, at *3 (holding that "*Garmon* does not preclude adjudication of Plaintiffs' FLSA claim.").

Defendants claim that "*a significant portion of the overtime hours*" for which Plaintiff claims wages are due are for hours not actually worked Plaintiff. *See* Def. Mol. at 3, 9, referring to Exhibits 6, 7 and 8 annexed to the declaration of Frank W. Brennan.  The spreadsheet annexed as Defendants' Exhibit 8, which appears to have been created in response to (and for purposes of) this litigation, identifies only 7 workweeks in which Plaintiff Moran was purportedly paid 9 hours for 8 hours of actual work during the 82-week period in which Plaintiff Moran worked the nightshift and was paid the incorrect overtime rate.[5]  Assuming, *arguendo*, that Defendants' spreadsheet is correct, the fact that Plaintiff Moran was purportedly paid 9 hours for 8 hours of actual work would not require the Court to interpret the CBA.  That fact can be proved *true* or *untrue* by examining the very same time and payroll records that the Court would use to determine the amount of hours actually worked and overtime wages owed to Plaintiffs.  If *true*, Defendants'

---

[5] Defendants' Exhibit 8 indicates that Plaintiff was paid 9 hours for 8 hours worked in the weeks ending 9/20/21, 9/27/21, 10/4/21, 10/11/21, 10/18/21, 10/25/21 and 11/1/21.  Plaintiff claims overtime wages owed for hours worked during the period September 2021 to April 2023.

assertion would, at best, entitle Defendants to an offset against the overtime wages owed Plaintiffs for these handful of hours, but it would not provide a complete defense to Plaintiffs' claims that Defendants failed to include all remuneration when calculating their overtime rate under the FLSA and NYLL.

Moreover, even if the CBA requires overtime for hours worked in excess of eight hours per day in addition to overtime for hours worked in excess of forty hours per week, Plaintiffs *only* bring claims to recover overtime for hours worked in excess of forty hours per week, as provided for by the FLSA and NYLL. Therefore, "Plaintiff's claims fall within the four corners of the FLSA and do not require any interpretation or analysis of the CBA's." *Fernandez*, 2023 WL 2525996, at * 4. Because Plaintiffs' FLSA claims do not require interpretation of the CBA, they are not preempted by the NLRA or LMRA. *Id*.

Finally, the fact that Plaintiff was paid at different regular rates within the same pay period also will not require the Court to interpret the CBA. *See* 29 C.F.R. § 778.115 ("Employees working at two or more rates. Where an employee in a single workweek works at two or more different types of work for which different non-overtime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs."); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 595-597 (2d Cir. 2007) (citing 29 C.F.R. § 778.115; and *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir. 1987)) (approving of and utilizing weighted average method to determine overtime rate of pay under FLSA where employees were paid multiple rates of pay based on multiple nightshift differentials under a collective bargaining agreement and noting that "[i]n other words, the regular rate should

22

be derived from the total compensation paid to an employee in a given pay period divided by the number of hours worked; such a calculation naturally encompasses the nightshift differentials, if any, worked by the employee."); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476, 68 S. Ct. 1186, 1202 (1948) (approving of weighted average calculation); *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337, 362 (E.D.N.Y. 2023) (citing 29 C.F.R. § 778.115) ("If, however, an employee is paid at differing rates during the same week, as Plaintiff was during his second employment period, 'his regular rate for that week is the weighted average of such rates. That is, his total earnings ... are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked.'"); *Boutsikakis v. Tri-Borough Home Care, Ltd.*, 2023 WL 3620646, at *4 (E.D.N.Y. Apr. 11, 2023) (discussing calculation of FLSA overtime rate through use of blended rate when employee paid multiple rates of pay during a single workweek). Therefore, in circumstances where the Plaintiffs were paid multiple rates of pay during a single work week, the FLSA and NYLL, and their applicable regulations, merely require the Court to calculate their proper overtime rate of pay by using their weighted average (sometimes referred to as their blended rate) of their rates of pay.

V.    **PLAINTIFFS' SECOND CLAIM FOR RELIEF FOR OVERTIME COMPENSATION STATES A CLAIM UNDER THE NYLL**

Plaintiff Moran's Second Claim for Relief alleges that Defendants failed to pay Plaintiffs their proper overtime rate for hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times their regular hourly rates in violation of the NYLL based on Defendants' failure to include all remuneration in calculating Plaintiffs' overtime. Defendants' motion inexplicably cites the proposition that the DBA – which requires payment of prevailing wages in certain circumstances – does not provide a private right of action. The second branch of Defendants' motion is predicated on the fiction that Plaintiff "attempt[s] to use the NYLL to

23

enforce his rights to DBA wages." It is readily apparent that Plaintiffs do not allege that Defendants failed to pay prevailing wages required by the DBA. Rather, as explained above, Plaintiffs seek to recover overtime at the rate one and one-half times the prevailing rate that they were actually paid, including the night differential, as required by the NYLL.

*Grochowski v. Phoenix Construction*, 318 F.3d 80 (2 Cir. 2003), cited by Defendants, is distinguishable. *See* Def. Mol. at 11. In *Grochowski*, the plaintiffs were employed as roofers and bricklayers on public works construction projects. The construction contracts stated that the DBA, and the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 327 *et seq.* ("CWHASSA"), were specific labor standards provisions applicable to all federally funded contracts. The contracts provided that "[t]he Contractor shall pay to all laborers and mechanics employed in the work not less than the wages prevailing in the locality of the Project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act (Title 40, U.S.C., Sections 276a-276a–5)." The plaintiffs sued to recover unpaid prevailing wages and overtime compensation under the FLSA, the CWHASSA and state common law. The district court dismissed the plaintiffs' CWHASSA claims holding that the statute does not create a private right of action. The district court also dismissed the plaintiffs' state law breach of contract claims because common law remedies are not available to recover prevailing wages under federally funded contracts and the DBA does not provide a private right of action. The dismissal was affirmed by the Second Circuit, which found that the plaintiffs' state law claims for breach of contract as third-party beneficiaries of the contracts and for quantum meruit were "indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA."

The instant action is readily distinguished because Plaintiffs do not seek to recover unpaid DBA prevailing wages at all, let alone through breach of contract or quantum meruit. Rather,

Plaintiffs bring only statutory claims to recover one and one-half times the wages that they were actually paid.  Unlike the DBA, the FLSA and the NYLL require employers to pay each employee a guaranteed minimum wage, and do not address liability for underpayment of hours at prevailing wage rates. *Id*. (citing 29 U.S.C. 206(a)(1)).  The FLSA and NYLL require that employees be paid overtime compensation equal to at least "one and one-half times the regular rate at which [the employee] is employed," for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1).  Although the FLSA does not expressly define "regular rate" of pay, the Supreme Court has determined that it is "the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242 (1945) (citation omitted) (emphasis added); *Gorman*, 488 F.3d at 595 (quoting *Walling*, 325 U.S. at 424-425)) (Second Circuit noting that "[a]s the Supreme Court has explained, it is 'the hourly rate actually paid the employee for the normal, non-overtime workweek,' and 'must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments'").  Thus, the *Grochowski* plaintiffs were entitled to overtime compensation equal to one and one-half times the hourly rates *actually* paid.  So too here, Plaintiffs are entitled to one and one-half times the hourly rates *actually* paid for the hours he worked in excess of forty hours per week under the FLSA and NYLL.  These claims simply have no relationship to the DBA and that statute is not implicated.

25

## <u>CONCLUSION</u>

Based on the foregoing, the Court should deny Defendants' motion to dismiss Plaintiffs'

Amended Complaint in its entirety.

Dated: Hauppauge, New York
       November 5, 2024

                                       ROMERO LAW GROUP PLLC
                                       *Attorneys for Plaintiff and Opt-in Plaintiffs*
                                       490 Wheeler Road, Suite 277
                                       Hauppauge, New York 11788
                                       Tel.: (631) 257-5588

                By:      */S/ Peter A. Romero*
                                 PETER A. ROMERO, ESQ.
                                 DAVID D. BARNHORN, ESQ.