UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MICHAEL MORAN, *on behalf of himself and all other persons similarly situated*,

                    Plaintiff,

        -against-

JOHN J. PICONE, INC.,
NORTHEAST REMSCO
CONSTRUCTION, INC., and
WESTERN BAYS CONSTRUCTORS
JOINT VENTURE,

                  Defendants.
-------------------------------------------------------------x

**MEMORANDUM & ORDER**

24-cv-4095 (NRM) (AYS)

NINA R. MORRISON, United States District Judge:

    Plaintiff Michael Moran brings this collective action on behalf of himself and others similarly situated[1] under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants John J. Picone, Inc., Northeast Remsco Construction, Inc., and Western Bays Constructors Joint Venture. Amended Compl. ("Am. Compl.") ¶¶ 1, 44–45, ECF No. 14. Defendants provided construction services for a project in the Town of Hempstead and employed Plaintiff as a laborer. *Id.* ¶ 1.

    Plaintiff alleges that Defendants improperly calculated his overtime

---

[1] On March 5, 2025, the Court adopted a Report & Recommendation by the Hon. Magistrate Judge Anne Y. Shields denying Plaintiff's motion to certify an FLSA Collective Action, without prejudice to renew after the Court decides Defendants' motion to dismiss. Docket Order dated March 5, 2025. Three opt-in Plaintiff have consented to join the putative FLSA collective. ECF No. 21; ECF No. 22; ECF No. 23. However, because Plaintiff has not yet been formally joined in this proceeding by any members of the putative collective, references to Plaintiff throughout are made in the singular.

1

compensation rates by failing to include the nightshift differential allegedly paid to Plaintiff, in violation of the FLSA and NYLL. *Id.* ¶¶ 1, 55–58 (first cause of action pursuant to the FLSA); *id.* ¶¶ 59–62 (second cause of action pursuant to the NYLL). Plaintiff also alleges that Defendants failed to provide written notice of regular and overtime rates of pay upon hire, in violation NYLL § 195(1), *id.* ¶¶ 63–65 (third cause of action), and that Defendants failed to provide wage statements required by NYLL § 195(3). *Id.* ¶¶ 66–68 (fourth cause of action).

Defendants have moved to dismiss Plaintiff's claims, arguing, *inter alia*, that they are preempted or precluded under the National Labor Relations Act ("NLRA") or the Labor Management Relations Act ("LMRA") and that Plaintiff's NYLL overtime claims are subject to the remedial confines of the Davis-Bacon Act ("DBA"). Defs. Mem. in Supp. of Mot. to Dismiss ("Defs. Mem.") 12–16, ECF No. 47-1.[2]

For the reasons discussed below, the Court <u>denies</u> Defendants' motion in its entirety.

## BACKGROUND

The Amended Complaint asserts the following facts, which the Court must accept as true for purposes of Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Michael Moran was employed as a laborer by Defendants on the Bay Park Conveyance Project in Hempstead, New York, from September 2021 to November 2023. Am. Compl. ¶¶ 1, 24. He was paid hourly, and the employer was

---

[2] Unless otherwise noted, page numbers in citations refer to ECF pagination.

2

not exempt from FLSA's requirements.[3]  *Id.* ¶¶ 7–15, 25.  Plaintiff claims his regular schedule was the night shift (8:00 PM to 6:00 AM), *id.* ¶ 26, and that, accordingly, he was paid a nightshift differential.  *Id.* ¶ 28.  Plaintiff alleges he regularly worked more than 40 hours a week, but his overtime was paid at a rate that was less than 1.5 times the blended nightshift rate he received.  *Id.* ¶¶ 32–42.[4]  Plaintiff alleges that this policy systematically underpaid overtime in violation of the FLSA and NYLL, and that Defendants paid and treated Plaintiff Moran and putative collective action Plaintiffs in a substantially similar manner.  *Id.* ¶¶ 49–50, 55, 61.  Plaintiff states that he "does not allege that Defendants failed to pay the nighttime differential, that the differential rate was incorrect, or that Defendants failed to comply with any contractual obligations."  *Id.* ¶ 31.

Plaintiff initiated this case on June 7, 2024, *see* Compl., ECF No. 1, and filed his Amended Complaint on September 5, 2024.  *See* Am. Compl.  Defendants filed their motion to dismiss under Rules 12(b)(1) and 12(b)(6) on November 27, 2024.

---

[3] Plaintiff alleges that Defendants were subject to the requirements of the FLSA because Defendants had annual gross revenue of at least $500,000, were engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Am. Compl. ¶¶ 9, 12, 15; *see also* 29 U.S.C. §§ 203(s)(1)(A)(i), (ii) (defining "[e]nterprise engaged in commerce or in the production of goods for commerce" for purposes of the FLSA).

[4] For example, for the pay period ending January 16, 2023, Plaintiff Moran was allegedly paid for 16 hours at the rate of $53.89 and 24 hours at the rate of $54.55. Defendants paid Plaintiff Moran for overtime hours at the rate of $65.98, a rate that was less than one and one-half times his blended regular rate for that pay period. Am. Compl. ¶ 33.  The Amended Complaint lists nine other examples of this same alleged overtime violation.  *Id.* ¶¶ 34–42.

3

Defs. Mot. to Dismiss ("Defs. Mot."), ECF No. 47.

In their motion, Defendants raise two arguments: (1) that all of Plaintiff's claims are preempted or precluded under the NLRA or the LMRA; and (2) that Plaintiff's NYLL overtime claims are subject to the remedial confines of the DBA. Defs. Mem. at 12–16.[5] In their reply in support of their motion to dismiss, Defendants raise an additional argument for the first time: that Plaintiff's claims alleging violations of NYLL §§ 195(1) and (3) fail to state a claim under *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024), because the Amended Complaint does not plead the sort of injury needed to confer standing under Article III. Defs. Reply in Supp. of Mot. to Dismiss ("Defs. Reply") 10–11, ECF No. 49.

The Court granted Plaintiff leave to file a sur-reply in light of Defendants' new argument in their reply. Docket Order dated Dec. 8, 2024. Plaintiff filed his sur-

---

[5] In support of their motion to dismiss, Defendants submit materials outside the pleadings, including the CBA, paystubs, and affidavits. *See* Defs. Mot.; Defs. Reply. On a Rule 12(b)(6) motion, however, the Court may consider only the complaint, documents attached to the complaint or incorporated by reference, matters of which judicial notice may be taken, and documents relied upon by plaintiff in bringing the suit or which are otherwise "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Documents offered merely to dispute the facts alleged cannot be considered without converting the motion to one for summary judgment under Rule 12(d). *See Shafir v. Continuum Health Partners, Inc.*, 57 F. Supp. 3d 325 (S.D.N.Y. 2014) (MGC). The documents attached either do not meet the requirements for consideration on Defendants' 12(b)(6) claims or are not relevant to resolving those claims.
  On a 12(b)(1) motion, the court may refer to evidence outside the pleadings, *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000), if the document is relevant to the jurisdictional question. *Cunningham v. Pret A Manger Ltd.*, No. 19-CV-2322 (CM), 2020 WL 122835, at *5 (S.D.N.Y. Jan. 10, 2020). For the reasons discussed below concerning Defendants' jurisdictional argument on LMRA or NLRA preemption, preclusion, or exhaustion, the documents Defendants attached are not relevant to the jurisdictional question and need not be considered.

reply on December 8, 2024. Pl. Sur-Reply in Opp'n to Defs. Mot. ("Pl. Sur-Reply"), ECF No. 51.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the [plaintiff's] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).

## DISCUSSION

Defendants' arguments are unavailing. First, Plaintiff's claims are not preempted or precluded by Section 301 of the LMRA or Sections 7 and 8 of the NLRA. Second, the DBA does not bar Plaintiff's NYLL overtime claims. Third, Plaintiff plausibly and sufficiently states a claim for wage notice and wage statement violations under NYLL. Additionally, to the extent Defendants argue that any arbitration clause in the project labor agreement governing the project or Plaintiff's union's collective bargaining agreement ("CBA") bars Plaintiff's claims, that argument does not hold at this juncture.

### I. Plaintiff's Claims Are Not Preempted or Precluded by the NLRA or the LMRA

Defendants argue that Plaintiff's FLSA claims are preempted or precluded by

5

the NLRA or the LMRA because Plaintiff's claims of unpaid overtime would be "a violation of both the DBA and CBA," "an unfair labor practice under the NLRA," and would require the Court to "interpret the requirements of the CBA relating to the allocation of the wages." Defs. Mem. at 12–13, 15. Defendants' motion papers are not a model of clarity, and often conflate or merge the separate legal arguments they appear to be making. But ultimately, Defendants appear to rest their motion on two contentions: (1) that Plaintiff's claims fall within Section 301 of the LMRA, and thus Plaintiff is required to exhaust the CBA's grievance procedures before raising his claims in court; and (2) that Plaintiff's claims involve activities protected or prohibited by Sections 7 and 8 of the NLRA and are thus preempted or precluded by that statute. Neither argument holds.

### a. Plaintiff's Claims Do Not Fall Within Section 301 of the LMRA

Section 301 of the LMRA "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement . . . ." *Isaacs v. Central Parking Sys. of N.Y., Inc.*, No. 10-CV-5636 (ENV) (LB), 2012 WL 957494, at *2 (E.D.N.Y., Feb. 27, 2012) (citation modified) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Section 301 also "precludes any such state law claim." *Id.* (citing *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990)). Before bringing a claim governed by Section 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement". *Id.* (quoting *Dougherty*, 902 F.2d at 203).

However, the Supreme Court has also emphasized that neither the preclusive

6

effect nor the exhaustion requirement of Section 301 "destroys independent, statutorily guaranteed rights" such as those in the FLSA. *See id.* at *3 (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)). Instead, "the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay" under the FLSA has led the Supreme Court to "h[old] that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

Thus, courts inquire whether a plaintiff's federal or state claims require interpreting a CBA; if not, those claims do not face the exhaustion requirement of Section 301. Where a plaintiff's FLSA or NYLL overtime claims do *not* require interpreting a collective bargaining agreement, courts have routinely found that those claims are not preempted or precluded by the LMRA. *See, e.g.*, *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513, 523–24 (S.D.N.Y. 2014) (JGK) (holding no preemption where "plaintiffs do not allege that the CBAs were breached or that the plaintiffs are owed any outstanding nighttime differential pay under the terms of the CBAs" because "[t]here is therefore no dispute about the parties' rights under the CBAs"); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 333–35 (S.D.N.Y. 2012) (VM) (holding no preclusion where there was no dispute that plaintiffs were entitled to night differential, defendant conceded he failed to add night differential to

7

overtime calculation, and plain language of CBA on the night differential was clear);[6] *Isaacs,* 2012 WL 957494, at *5 (holding no preclusion of FLSA and NYLL claims where the court would not need to determine plaintiff's non-overtime rate under relevant CBAs, plaintiff made no allegation his non-overtime rate was incorrect, and plaintiff explicitly did not allege a breach of the CBA or challenge any of its provision).

Here, Plaintiff's claims do not require interpreting the CBA. Plaintiff specifically states that he "does not allege that Defendants failed to pay the nighttime differential, that the differential rate was incorrect, or that Defendants failed to comply with any contractual obligations." Am. Compl. ¶ 31. Instead, he alleges that he was *actually paid* a nighttime differential, but that the nighttime differential was not included in his overtime pay calculations, in violation of the FSLA and NYLL. *See id.* ¶¶ 28–32. While Defendants, in a cursory fashion, state that the failure to properly calculate overtime would require the Court to "interpret the CBA," they are incorrect. Plaintiff does not allege his rates of pay were miscalculated or misawarded pursuant to a provision of the CBA. Instead, Plaintiff very clearly alleges that his overtime was improperly calculated based on the amount he was *actually paid*, regardless of whether that was the correct amount pursuant to the CBA, and that this miscalculation was done in violation of the time-and-a-half mandate for overtime pay under the FLSA and NYLL. Plaintiff's claims thus fall

---

[6] In contrast, the *Johnson* Court held that the plaintiffs' FLSA and NYLL claims related to overtime pay on "grandfather" and "hi-lo pay" differentials were preempted or precluded by the LMRA because the question of whether the plaintiffs were entitled to those differentials in the first place was "inextricably intertwined" with the CBA. 861 F. Supp. 2d at 332–33.

8

squarely in the category of FLSA and NYLL claims, discussed *supra*, that need not be exhausted under Section 301 and are not precluded or preempted by the LMRA. *See Ramirez*, 35 F. Supp. 3d at 523–24; *Johnson,* 861 F. Supp. 2d at 333–35; *Isaacs*, 2012 WL 957494, at *5.

While the court in *Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301 (E.D.N.Y. 2011) (ADS), found the plaintiff's FLSA overtime claim was preempted by Section 301 of the LMRA, that case is distinguishable. In *Hoops*, the plaintiff argued that he was "entitled to miscellaneous shift differentials when [he] work[ed] certain hours." *Id.* at 303. After the employer implemented a new payroll program to calculate his wages, the plaintiff alleged that the employer "stopped including certain shift differentials in the calculation of his overtime compensation in violation of the FLSA." *Id.* The plaintiff specifically acknowledged that "before the Court reaches the question of whether the Defendants failed to pay him overtime wages under the FLSA, the Court must first "determine what straight-time wage rate the Plaintiff was entitled to be paid (including night differential premium pay for hours worked during night shifts)." *Id.* at 306 (citation modified) (citation omitted). Because the plaintiff's "right to receive night shift differentials is a contractual right under the CBA," the *Hoops* Court held it "must be submitted to the grievance procedures in the CBA." *Id.*

Unlike in *Hoops*, Plaintiff here is not raising any argument about whether he is entitled to the night differential in the CBA. He instead focuses on the fact that the straight-time rates that he alleges he actually received, which allegedly included

9

a night deferential, were not properly converted into a time-and-a-half overtime rate pursuant to the FLSA and NYLL. One court, subsequent to *Hoops*, underscored this key distinction. In *Isaacs*, the court considered a plaintiff's claims that his employer excluded shift differentials and longevity pay from his overtime rate calculation. 2012 WL 957494, at *5. The *Isaacs* plaintiff had "not represented, nor d[id] the amended complaint indicate, that the Court would need to determine [the plaintiff's] nonovertime rate under the CBAs." *Id.* The *Isaacs* plaintiff also made "no allegation that [his] nonovertime rate was incorrect," did not "allege a breach of the CBA," and did not "challeng[e] any provision" in the CBA. *Id.* The *Isaacs* court reasoned that, "[i]f plaintiff's claim require[d] the Court to determine *whether* certain shift differentials and longevity pay were required to be incorporated into [the plaintiff's] regular wages in accordance with the CBAs, the claim must be dismissed since that type of dispute is subject to contractual grievance procedures."[7] *Id.*

---

[7] The Court notes that, in the instant motion, Defendants generally reference the "broad arbitration provisions" of the CBA, Defs. Mem. at 8, but do not explicitly seek dismissal on the ground that the parties agreed to arbitrate some or all of the claims Plaintiff brings here. Nevertheless, to the extent that Defendants' motion to dismiss may be read to so argue, that claim is meritless. First, because the Court concludes that Plaintiff's FLSA claims do not depend or otherwise rely upon any contractual right under the CBA, the Court may not consider the CBA at the motion to dismiss stage. *See* note 5 *supra* (citing *Chambers*, 282 F.3d at 153). Second, even if the Court did reach the CBA, the requirements for a CBA to waive an employee's statutory rights are stringent. "A collective bargaining agreement cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement was 'clear and unmistakable' that the parties intended to arbitrate such claims," and a "clear and unmistakable waiver" can be shown where "(1) [the] arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes." *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461,

(emphasis added). In contrast, "if the Court only needs to determine whether shift differentials and longevity pay, which were actually paid to [the plaintiff], should have been used to calculate [his] overtime rate, such a claim would not be subject to the grievance procedures." *Id.* The *Isaacs* Court thus held that the plaintiff's "statutory overtime claim will require only oblique, if any, reference to the CBAs" and plaintiff's complaint thus "makes out a claim under FLSA and its New York counterpart." *Id.* Plaintiff's instant claims align neatly with those of the *Isaac* plaintiff, and this case is similarly distinguished from *Hoops*.

Defendants also argue that time sheets and sign-in sheets they attach to their motion to dismiss "clearly demonstrate that in addition to being compensated for overtime pursuant to the CBA the Plaintiff was, in fact, paid for hours not worked," and that such compensation is not included in FLSA calculations. Defs. Mem. at 14. Defendants here levy an argument that relies on material that is more appropriate for the summary judgment stage of litigation, as it involves factual disputes about the amount of money Plaintiff was actually paid, the hours he actually worked, and how these considerations factor into the FLSA overtime calculation.[8]

---

469 (S.D.N.Y. 2010) (TPG) (citation omitted). The *Alderman* Court found that statutory claims were *not* waived by a standard CBA grievance and arbitration provision very similar to the CBA and PLA provisions submitted by the parties here. *See id.* at 470.

[8] Defendants in their reply argue that a review of the Project Labor Agreement ("PLA") — which they attach to their motion — "demonstrates that it clearly lacks any mention of the Plaintiff's right to receive a certain 'night differential' for work performed on the Project." Defs. Reply at 4. Plaintiff argues that they are making no argument about what the CBA or the PLA entitled them to, but rather that they were *actually paid* a night differential and that the differential was improperly

### b. Plaintiff's Claims Do Not Involve Activities Protected or Prohibited by Sections 7 and 8 of the NLRA

Defendants cite *San Diego Building Trades Council v. Garmon* and argue that Plaintiff's claims under the FLSA and NYLL are "preempted and/or precluded by the NLRA/LMRA."[9]  *See* Defs. Mem. at 12–15 (discussing *Garmon*, 359 U.S. 236 (1959)). Neither Plaintiff's FLSA or NYLL claims are precluded or preempted under the *Garmon* doctrine.

In *Garmon*, the Supreme Court provided that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [Section] 7 of the National Labor Relations Act, or constitute an unfair labor practice under [Section] 8, due regard for the federal enactment requires that state jurisdiction must yield." *Garmon*, 359 U.S. at 244. Section 7 of the NLRA details the rights of employees to organize and collectively bargain. 29 U.S.C. § 157. Section 8 details unfair labor practices. 29 U.S.C. § 158.

As a threshold matter, Plaintiff's claims do not involve the kind of organizing or collective bargaining activities encompassed by Section 7 of the NLRA (*i.e.*, "to form, join, or assist labor organizations, to bargain collectively through representatives of their choosing, and to engage in other concerted activities for the

---

excluded from their overtime calculations for purposes of the FLSA.  *See* Pl. Sur-Reply at 4.  Because Plaintiff argues that they were *actually paid* a night differential, the Court need not interpret the PLA or CBA, and Plaintiff's claims are not precluded or preempted by the LMRA.

[9] A federal statute cannot "preempt" another federal statute but may "preclude" a cause of action under another.  *See Cortese v. Skanska Koch, Inc.*, No. 21-473, 2023 WL 8368858, at *3 (2d Cir. Dec. 4, 2023) (summary order).

12

purpose of collective bargaining or other mutual aid or protection . . . ."), nor the employer unfair labor practices detailed in Section 8 of the statute (*i.e.*, interfering with the exercise of employees' rights under Section 7; "dominat[ing] or interfer[ing] with the formation or administration of any labor organization"; encouraging or discouraging membership in a labor organization by "discriminati[ng] in regard to hire or tenure of employment or any term or condition of employment"; "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges or given testimony" under the sub-chapter; and "refus[ing] to bargain collectively with the representatives of his employees"). 29 U.S.C. §§ 157, 158(a).

Defendants have not identified a single case in which preclusion or preemption was found under *Garmon* in these circumstances, nor is this Court aware of one. To the contrary, the case law supports the conclusion that Plaintiff's FLSA and NYLL overtime claims are not precluded or preempted under *Garmon*. In *Cortese v. Skanska Koch, Inc.*, for example, Judge Rakoff held that *Garmon* did not preempt or preclude the plaintiffs' claims — including FLSA and NYLL wage claims — where the defendant-employer entered into a project labor agreement with the Port Authority that set terms and conditions separate from those in the plaintiffs' collective bargaining agreement with the defendant-employer. 544 F. Supp. 3d 456, 465–66 (S.D.N.Y. 2021) (JSR). Judge Rakoff held that the defendant-employer's entering into the project labor agreement with the Port Authority did not constitute an "unfair labor practice" triggering *Garmon* preemption. *Id.* The Second Circuit

13

subsequently echoed that principle.  *See Cortese v. Skanska Koch, Inc.*,[10] No. 21-473, 2023 WL 8368858, at *2–3 (2d Cir. Dec. 4, 2023) (summary order) (rejecting district court's finding that enforcing a construction agreement would be "a unilateral change to [p]laintiffs' compensation" that may constitute "an unfair labor practice" triggering *Garmon* preemption or preclusion).  Though those cases involved the question of whether *Garmon* preempted the plaintiffs' FLSA and NYLL claims where the alleged unfair labor practice was the defendant-employer's entering into a separate agreement with a contractor to set certain minimum standards affecting employees, the cases implicitly support the idea that the actual payment of allegedly improper wages, in contravention of the overtime provisions of the FLSA and NYLL, is not itself an unfair labor practice implicating Sections 7 or 8 of the NLRA and requiring *Garmon* preemption.

Indeed, the allegation that a defendant-employer's payment of actual wages to an employee violated the overtime provisions of the FLSA and NYLL differs markedly from claims under those statutes where *Garmon* preemption has been found to apply. For example, Judge Failla has held *Garmon* preemption required dismissal of the plaintiffs' claims of unlawful wage deduction under the NYLL (arguing that their employer unlawfully deducted wages specifically for union dues), retaliation under the NYLL (arguing that their employer tricked plaintiffs into signing union

---

[10] This Second Circuit case was *not* an appeal of Judge Rakoff's decision but rather an appeal from a decision by Judge Liman in a separate case coincidentally bearing the same name, *Cortese v. Skanska Koch, Inc.*, No. 20-CV-1632 (LJL), 2021 WL 429971 (S.D.N.Y. Feb. 8, 2021).

14

membership cards in retaliation for initiating litigation), and retaliation under the FLSA (for similar reasons as the NYLL retaliation claim). *Figueroa-Torres v. Kleiner*, No. 20-CV-4851 (KPF), 2022 WL 768483, at *7–13 (S.D.N.Y. Mar. 14, 2022). The defendants in that case did not even seek to dismiss the plaintiffs' overtime wage claims under their *Garmon* preemption line of argument. *See id.* at *2. The wage deduction and retaliation claims Judge Failla held were preempted or precluded under *Garmon* much more clearly implicated the NLRA provisions that trigger preemption or preclusion.

Thus, the Court concludes that *Garmon* does not preclude or preempt Plaintiff's FLSA and NYLL claims.

## II.   Plaintiff's NYLL Overtime Claims Are Not Confined to Remedies in the DBA

Defendants argue that Plaintiff "fails to state a claim" under the NYLL because the "DBA does not provide a private right of action" and "Plaintiff's attempt to use the NYLL to enforce his right to DBA wages would 'circumvent the procedural requirements of the DBA.'" Defs. Mem. at 16 (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d. Cir. 2003)). The DBA requires contractors on federally funded projects to pay prevailing wages, but it provides no private right of action. 40 U.S.C. § 276a, *et seq*.

Defendants' reliance on *Grochowski* is misplaced. In that case, the Second Circuit held that "no private right of action exists" under the DBA and affirmed the district court's dismissal of the plaintiffs' state law claims in contract or quantum

15

meruit, reasoning that they were "indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA." 318 F.3d at 86.

As relevant here, in *Grochowski*, the district court had allowed certain plaintiffs' FLSA claims to *proceed* to trial, notwithstanding the lack of a private right of action under the DBA. *Id.* at 84. The Second Circuit held that the FLSA overtime calculations must be calculated at "one-and-a-half times the hourly rates *actually paid*" instead of one-and-a-half times the prevailing wages pursuant to the DBA, as the plaintiffs argued. *Id.* at 87 (emphasis added). That aspect of the *Grochowski* holding underscores its limited nature; the case prevented the enforcement of DBA-specific prevailing wages through state contract claims. The case said nothing about plaintiffs' ability to enforce separate, statutory rights under the FLSA and NYLL to overtime pay for work *actually completed* and pay *actually received*. Plaintiff does not seek to privately enforce the DBA's prevailing wage provisions; indeed, the DBA is entirely absent from Plaintiff's Amended Complaint. *See generally* Am. Compl. Instead, he seeks to correct an alleged overtime calculation error based on the wages he was actually paid.

### III. Plaintiff Has Stated a Claim for Wage Notice and Wage Statement Violations Under the NYLL

Plaintiff brings claims under NYLL § 195(1) (failure to provide Plaintiff upon hire with an accurate written notice of his regular rate of pay and overtime rate of pay) and § 195(3) (failure to furnish Plaintiff with a statement with every payment of wages listing the correct overtime rate(s) of pay). Am. Compl. ¶¶ 64, 67. In their reply in support of their motion to dismiss, Defendants argue, for the first time, that

16

Plaintiff fails to state a claim for those alleged wage notice and wage statement violations under NYLL. Defs. Reply at 10–11. The Court need not consider arguments raised for the first time in a reply. *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 n.12, 100 n.16 (2d Cir. 2007). However, because the Court gave Plaintiff the opportunity to file a sur-reply to Defendants' reply, the Court, in its discretion, considers these arguments.

Defendants rely on *Guthrie v. Rainbow Fencing, Inc*, 113 F.4th 300 (2d Cir. 2024), and cast that decision as holding that "New York State Wage Theft Act claims, such as those raised in [Plaintiff's] Third and Fourth claims for relief, are not recoverable in this Court." Defs. Reply at 10. Defendants further argue that Plaintiff was provided certain forms that satisfy the notice requirement and that Plaintiff's claims are an attempt to circumvent the DBA and thus should be dismissed. *Id.* at 11.

The Court can quickly dispose of the latter two arguments. The argument that Plaintiff was provided certain forms that satisfied the NYLL requirements raises a factual dispute that is inappropriate for the Court to consider at the motion to dismiss stage. The argument that Plaintiff's NYLL §§ 195(1) and (3) claims are attempts to circumvent the DBA fares no better than the same argument Defendants levied against Plaintiff's FLSA and NYLL overtime claims, discussed *supra*: these claims seek, not to privately enforce DBA prevailing wage rates, but to enforce a separate right arising from an entirely different source, *i.e.*, Plaintiff's right to obtain

17

certain notices and wage statements concerning their actual wages as guaranteed by New York state law.

Neither is Defendants' argument relying on *Guthrie* meritorious. In *Guthrie*, the Second Circuit applied the U.S. Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021), to hold that plaintiffs seeking statutory damages under NYLL § 195 lack Article III standing when they fail to show a causal connection between the lack of accurate notices and downstream harm. 113 F.4th at 308–09. A bare "informational injury" is insufficient; the violation must cause a concrete injury, such as inability to detect underpayment, delayed wages, or other financial consequences. *Id.* at 308 & n.4. By contrast, Article III is satisfied where a plaintiff alleges that deficient notices plausibly contributed to wage loss. *Id.* at 310 ("[A]n employee who has actually lost wages is not analogous to a plaintiff-tester."). Because the *Guthrie* plaintiff "identified potential harms that *could* result from an employer's failure to provide wage notices and wage statements" — for example, that the "lack of such notices and statements *might* impair 'an employee's ability to seek relief for violations they may not have information about,' . . . or result in a 'lack of documentation to apply for public benefits'" — he did not plausibly allege that his employer's failure to provide the wage notices and statements "caused *him* to suffer any of those harms." *Id.* (first emphasis in original, second and third emphases added) (citation omitted). That plaintiff's allegations of "possible injuries," and his failure "to link the general harms an employee *might* experience to any harms that

18

[the plaintiff himself] *did*, in fact, experience" meant he lacked standing to raise his NYLL wage notice and statement claims. *Id.*

Plaintiff's Amended Complaint easily meets the standing requirement articulated in *Guthrie*. Plaintiff alleges more than a technical violation or an informational injury. He asserts that the inaccurate wage statements failed to reflect the nightshift differential in the overtime rate, thereby obscuring Defendants' underpayment of overtime. *See* Am. Compl. ¶ 46 ("Defendants' failure[s] . . . prevented Plaintiff from knowing to what extent he had been underpaid and seeking payment for the precise amount of his unpaid wages."); *id.* ¶ 47 ("As a result, Plaintiff was deprived of his income for longer than he would have been had he been able to timely raise his underpayment earlier. . . . Plaintiff would have asserted his claim sooner if accurate statements had been provided."); *id.* ¶ 48 ("Defendants' failure to provide accurate notices and statements not only denied Plaintiff the time-value of the underpayments he seeks to recover in this action, but also resulted in [the] continued practice of paying Plaintiff less than one and one-half times his regular rate for hours that he worked after 40 hours per workweek."). These are allegations of specific downstream harms resulting in quantifiable loss of wages. They are not "potential harms that *could* result from an employer's failure to provide [the] wage notices and wage statements." *Guthrie*, 113 F.4th at 310. They are harms that Plaintiff alleges he "*did*, in fact, experience." *Id.*

Accordingly, Plaintiff has standing to assert his NYLL §§ 195(1) and (3) claims. *See, e.g.*, *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM) (SIL), 2025 WL

19

1808694, at *13 (E.D.N.Y. July 1, 2025) (holding that Article III standing was satisfied where plaintiffs pleaded that "[d]efendants' failure to provide [p]laintiffs with [wage] information caused [p]laintiffs to endure uncertainty regarding their wages and prevented them from taking action to correct [d]efendants' wage and hour violations"); *Johnson v. Best Bev LLC*, No. 24-CV-1260 (AJB) (ML), 2025 WL 2734204, at *5 (N.D.N.Y. Sep. 25, 2025) ("[P]laintiff here has 'identified a concrete downstream harm he suffered as a result of the statutory violations': the alleged underpayments, or the lost time-value of money." (citation modified) (quoting *Guthrie*, 113 F.4th at 311)).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is denied in its entirety.

SO ORDERED.

    */s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:    September 30, 2025
             Brooklyn, New York